ELLEN K. STONE *vs.* WILLIAM H. Y. HACKETT, Executor, & others.

A delivery, without consideration, of shares in railroad corporations, with blank assignments indorsed thereon, upon trust to pay the income to the settler for life, and at his death to transfer the shares to certain charitable objects, (the settler reserving the right to modify the uses or revoke the trust,) is valid, and will be upheld in equity against the settler's widow, claiming the share which the law allows her in property of which he died possessed.

BILL IN EQUITY, in the nature of a bill of interpleader, to obtain the instructions of the court in the disposition of property held by the plaintiff under the following declaration of trust:

" This memorandum witnesseth that I have in my hands

eighty one shares in the Eastern Railroad, thirty nine shares in the Eastern Railroad, New Hampshire, making in all one hundred and twenty shares; also fifty shares in the Fitchburg Railroad; all such shares standing in the name of Harriet Kittredge or Harriet P. Kittredge, as trustee. The said several shares were purchased with the money of Dr. Rufus Kittredge of Portsmouth, New Hampshire, and are in my hands in trust for the following purposes and uses, that is to say, the income and dividend on said several shares are to be paid to the said Rufus Kittredge, during his lifetime; and at his decease, twenty shares in the Fitchburg Railroad are to go to the Trustees of Donations for Education in Liberia in Africa; the remaining shares are to go, one half to the American Board of Commissioners for Foreign Missions, the property to remain invested and the income to be used as specified in the act of incorporation; the other half to be given to the McLean Asylum, situated in Somerville, Massachusetts, and to remain invested, and the income to be used in aid of the support at the asylum of poor insane persons of the State of New Hampshire. Said Rufus Kittredge retaining the right to modify said uses or to revoke said trust. Ellen K. Stone."

The case was set down for hearing upon the bill and answers, and was as follows:

Dr. Kittredge in his will, executed on the 28th of October 1852, and confirmed by a codicil of the 1st of October 1853, made provision for his wife, and bequests to many individuals and to the American Board of Commissioners for Foreign Missions, and constituted the Trustees of Donations for Education in Liberia his residuary devisees and legatees.

About the 1st of December 1853 Dr. Kittredge, having previously purchased the stock mentioned in the above declaration of trust, and taken certificates thereof in the name of Harriet P. Kittredge, or Harriet Kittredge, trustee, (who had previously signed a declaration of trusts similar to this, and afterwards died,) sent the certificates, with blank transfers indorsed upon them and signed by Harriet P. Kittredge, to the plaintiff, with the above declaration of trust, which he requested her to sign

and return it to him, and she did so. The plaintiff never paid any consideration for the shares, and the dividends thereon were paid to Dr. Kittredge during his life.

Dr. Kittredge died in February 1854 without issue, and his will was admitted to probate in New Hampshire in April 1854. He left property enough, besides the stocks mentioned in the declaration of trust, to pay and satisfy all the legacies and provisions of his will. His widow waived the provision made for her in her husband's will, and claimed the share of his estate to which she was then entitled by the statute of New Hampshire, which provided that the widow of every man deceased testate, leaving no lineal descendant, should be entitled, beside her dower, to one third of all his estate, after paying debts and expenses, if no provision was made for her in the will, or if she waived the provision. Rev. Sts. of N. H. *c.* 165, § 8. Comp. Sts. *c.* 175, § 8.

After the death of Dr. Kittredge, and before filing this bill, the plaintiff filled up, as of the date of December 1st 1853, the blank transfers indorsed on the backs of the certificates of stock, and demanded new certificates; but the corporations declined to issue them.

The Massachusetts General Hospital in their answer insisted upon the validity of the declaration of trust, and claimed the portion of stock therein given to the McLean Asylum in Som erville, which was one department of their institution.

The widow answered that the stock enumerated in the declaration of trust was never transferred or delivered to the plaintiff, and that such transfer, if made, was testamentary in its nature, designed to avoid the effect of the laws of New Hampshire, and, as to her, fraudulent and void.

The executor of the will of Dr. Kittredge, the representatives of Harriet P. Kittredge, the American Board of Commissioners for Foreign Missions, the Trustees of Donations for Education in Liberia, and the railroad corporations, filed answers submitting their rights to the decision of the court, or suffered the bill to be taken for confessed against them.

*H. Gray, Jr.,* for the Massachusetts General Hospital.

*A. R. Hatch,* (of New Hampshire,) for the widow. The only claim of the plaintiff or the charitable societies is by gift of Dr. Kittredge. If the transaction is regarded as . testamentary, it was ineffectual to pass the property. It is not pretended that this was a gift *causa mortis.* It lacks the essential elements of a gift *inter vivos.* The donor must part not only with the possession, but the dominion, over his property. 2 Kent Com. (6th ed.) 437 *& seq.* 2 Bl. Com. 439, 441. *Grattan* v. *Appleton,* 3 Story R. 755. *Gage* v. *Gage,* 12 N. H. 371. *Marston* v. *Marston,* 1 Foster, 513. *Cook* v. *Brown,* 34 N. H. 460. *Maynard* v. *Maynard,* 10 Mass. 456. *Dole* v. *Lincoln,* 31 Maine, 422. *Allen* v. *Polereczky,* 31 Maine, 338. *Withers* v. *Weaver,* 10 Barr, 391. *Stallings* v. *Finch,* 25 Alab. 518. *Hitch* v. *Davis,* 3 Maryland Ch. 266. *Busby* v. *Byrd,* 4 Rich. Eq. 9. *Walden* v. *Dixon,* 5 T. B. Monr. 170. The delivery of the stock was insufficient, for want of filling up the blank indorsements, or making transfers on the books of the corporations. *Ward* v. *Turner,* 2 Ves. Sen. 431. *Bryson* v. *Brownrigg,* 9 Ves. 1. *Antrobus* v. *Smith,* 12 Ves. 39. *Pennington* v. *Gittings,* 2 Gill & Johns. 208. *Taylor* v. *Fire Department in New York,* 1 Edw. Ch. 294. *Fisher* v. *Essex Bank,* 5 Gray, 378. The gift, if otherwise valid, was but an evasion of the statute of wills, and a fraud on the widow. 2 Bl. Com. 441. *Dole* v. *Lincoln,* 31 Maine, 433. *Ruth* v. *Owens,* 2 Rand. 507. *Stone* v. *Stone,* 18 Missouri, 389. *Turner* v. *Jennings,* 2 Vern. 612. *Hall* v. *Hall,* 2 Vern. 277. *Smith* v. *Fellows,* 2 Atk. 62, 377.

BIGELOW, J. The key to the solution of the question raised in this case is to be found in the equitable principle, now well established and uniformly acted on by courts of chancery, that a voluntary gift or conveyance of property in trust, when fully completed and executed, will be regarded as valid, and its provisions will be enforced and carried into effect against all persons except creditors or *bona fide* purchasers without notice. It is certainly true that a court of equity will lend no assistance towards perfecting a voluntary contract or agreement for the creation of a trust, nor regard it as binding so long as it remains executory. But it is equally true that if such an agreement

or contract be executed by a conveyance of property in trust, so that nothing remains to be done by the grantor or donor to complete the transfer of title, the relation of trustee and *cestui que trust* is deemed to be established, and the equitable rights and interests arising out of the conveyance, though made without consideration, will be enforced in chancery.

The leading case in which this principle is declared and acted on is *Ellison* v. *Ellison*, 6 Ves. 656, in which Lord Eldon decreed the enforcement of a trust, which in its creation was wholly voluntary and without consideration. This has been followed by many other cases in which the same principle has been recognized. *Pulvertoft* v. *Pulvertoft*, 18 Ves. 84. *Ex parte Pye*, 18 Ves. 140. *Sloan* v. *Cadogan*, Sugd. Vend. & Purch. (11th ed.) 1119. *Fortescue* v. *Barnett*, 3 Myl. & K. 36. *Wheatley* v. *Purr* 1 Keen, 551. *Blakely* v. *Brady*, 2 Dru. & Walsh, 311. *Browne* v. *Cavendish*, 1 Jon. & Lat. 637. *Kekewich* v. *Manning*, 1 De Gex, Macn. & Gord. 176. The last named case contains a ful. discussion of all the authorities, and a clear and accurate statement of the doctrine on the subject.

The application of the principle established by these authorities is entirely decisive of the rights and duties of the parties to this suit. The conveyance or transfer of the shares to the plaintiff in her capacity as trustee was full and complete and vested in her the legal title to the property. No further act was to be done by the original owner of the shares to consummate the plaintiff's title. As between the parties, the delivery of the certificates of stock, with the assignments of some of them, and the power of attorney to transfer the others, was equivalent to a complete executed transfer of the shares. Nor is it at all material to the validity of the plaintiff's title, that transfers of the shares had not been recorded in the books of the different corporations and new certificates of stock taken out by her. That was not necessary to the conveyance of the legal title as between the donor and the plaintiff. This is well settled by the authorities in this state. *Quiner* v. *Marblehead Social Ins. Co.* 10 Mass. 476. *Ellis* v. *Essex Merrimack Bridge*, 2 Pick. 248. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 96. *Eames* v. *Wheeler*, 19

Pick. 444. Such too is the plain import of the statute prescrib ing the mode of transferring shares in railroad corporations which provides that no conveyance of shares shall be valid " against any other persons than the grantors or their represent-atives," unless recorded as therein directed, clearly implying that no such record is necessary to pass the title as between the vendor and his personal representatives. Rev. Sts. *c.* 39, § 52. There was then a legal transfer of the property, fully executed to the plaintiff. There was also a full and explicit declaration of trust, executed by her and delivered to the grantor, by which she accepted the gift and took on herself the execution of the trusts which he intended to establish. Nothing therefore was left *in fieri.* The transaction was a completely executed transfer of property, and fully created a trust, which, according to the principle already stated, a court of equity is bound to recognize and enforce.

It was suggested by the learned counsel for the widow that the donor never parted with his power or dominion over the property, because he retained a right to annul or revoke the trust. But this seems to us quite immaterial. A power of revocation is perfectly consistent with the creation of a valid trust. It does not in any degree affect the legal title to the property. That passes to the donee and remains vested for the purposes of the trust, notwithstanding the existence of a right to revoke it. If this right is never exercised according to the terms in which it is reserved, as in the case at bar, until after the death of the donor, it can have no effect on the validity of the trusts or the right of the trustee to hold the property.

Nor are we able to see any force in the suggestion that the trust which the donor created in some of its features looked to a disposition of the property which was the subject of the gift after his death. We know of no principle of law which renders such a transfer of property *inter vivos* invalid. The entire *jus disponendi* was in the donor. Perhaps if there were any facts to show that the transaction was intended to be testamentary in its character, and was entered into for the purpose of evading the provision of law regulating the execution of last

wills and testaments, there might be some ground for impeaching the validity of the conveyance and withholding the sanction of the court from the trusts which the donor intended to establish. But it is not necessary to determine this question; because there is no evidence from which any such intent on the part of the donor in the present case can be inferred. The form of the transaction, and the trusts which were declared between the parties, afford no just ground for the inference that there was any collusion or fraudulent attempt by the donor to defeat the operation of the law of the State of New Hampshire or to deprive his widow of a fair share of his estate.

For these reasons we are of opinion that a decree should be entered declaring the validity of the trusts set out in the bill, and directing the plaintiff to dispose of the property accordingly.

*Decree accordingly.*