CHARLES W. CRAMER, ADMINISTRATOR, *vs.* THE HARTFORD-CONNECTICUT TRUST COMPANY ET AL.

First Judicial District, Hartford, May Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued May 17th—decided July 25th, 1929.

*Ufa E. Guthrie* and *Hamilton McInnis* of New York City, for the appellant (plaintiff).

*Lawrence A. Howard* and *Cyril Coleman,* for the appellees (defendants).

MALTBIE, J.   This action is brought by the administrator upon the estate of Grace D. Dodd against The Hartford-Connecticut Trust Company, named trustee in a certain instrument purporting to be a trust agreement, executed and delivered by her to it, and also against the administrator of the estate of one of the

beneficiaries named in that instrument and against a living beneficiary, claiming that the instrument be declared null and void, and that the defendant Trust Company account for the property received under it and for damages. In the fourth count of the complaint it was alleged that the property transferred to the Trust Company was not within the term "securities" as used in the instrument and that the Trust Company had taken and held it as agent and servant of Mrs. Dodd and had refused to surrender it to the plaintiff on demand. A fifth count was added by amendment, in which it was alleged that the agreement was testamentary in character and that, not having been executed in accordance with the provisions of the statute governing the execution of wills, it was invalid and void. By agreement of counsel and in accordance with the provisions of § 5636 of the General Statutes, the trial court heard and determined the issues arising under the fourth and fifth counts before the trial of certain issues raised by the other counts. From its decision, upholding the instrument as creating a valid trust of the property transferred to the Trust Company, the plaintiff has appealed.

On October 7th, 1921, Mrs. Dodd's husband committed suicide, leaving a will in which the defendant Trust Company was named executor. Mrs. Dodd was at the time disabled by paralysis so that she could only speak a few words at a time and could not write with her right hand. One of the trust officers of the Trust Company called upon her and a power of attorney was executed by her to it. When Mr. Dodd's safe deposit box was opened, most of Mrs. Dodd's property was found in it, and the Trust Company, under the power of attorney, took possession of it, gave Mrs. Dodd a receipt, and thereafter, until November, 1921, held it as her agent. Mrs. Dodd expressed a wish to

make some provision with reference to her property so that it would not go to her relatives. As a result, the instrument in question, a copy of which is printed in the footnote, was drawn up by the officer of the Trust

THIS INDENTURE made this 18th day of November, 1921, by and between Grace D. Dodd, of Hartford, Connecticut, hereinafter called the Donor, and The Hartford-Connecticut Trust Company, of said Hartford, hereinafter called the Trustee, witnesseth:—

WHEREAS, the Donor desires to assign, pay over and transfer unto the Trustee certain securities set forth in Schedule A, which said schedule is hereto annexed and made a part hereof, to be held and managed in accordance with the terms of the trust hereby created, and

WHEREAS, the Trustee has agreed to accept said securities and to hold and manage the same in accordance with the terms of said trust.

NOW, THEREFORE, the Donor in consideration of the premises and of the sum of One Dollar to her in hand paid by the Trustee has assigned, transferred and paid over unto the Trustee the securities set forth and described in said Schedule A as aforesaid.

TO HAVE AND TO HOLD the above named securities together with the proceeds thereof and the interest, and income thereon, unto the Trustee IN TRUST, NEVERTHELESS, to receive the interest, issues and profits, and to hold and dispose of the income and principal as hereinafter provided:

FIRST: The Trustee shall pay to or for the benefit of the Donor the net income of said trust, and in addition thereto such amounts of the principal in such sums, at such times and in such amounts as in the discretion of the Trustee may be necessary for the maintenance, comfort and support of the Donor.

SECOND: Upon the death of the Donor, this trust shall terminate and the Trustee shall pay over to the Executor or Administrator of the Donor such sum as may be found necessary to pay the debts and expenses of administration and taxes due from the estate of the Donor: provided, however, that such payments shall be made by the Trustee only to the extent that said estate shall be found insufficient to meet such expenditures.

THIRD: After providing for the expenditures set forth in the Second clause of this deed, the Trustee shall pay to Dr. Arthur M. Couch, of Hartford, Connecticut, the sum of One Hundred (100) Dollars; and to each of the sisters of the Donor, namely; Alice and Jennie, both of Brooklyn, New York, the sum of One Hundred (100) Dollars, said legacies are to be paid by the Trustee free of tax to the legatees and as a remembrance from the Donor, the

Company and executed by her, she signing it with her left hand, which she had learned to use. Thereafter

legatees and particularly the sisters of the Donor being otherwise well provided for and possessed of sufficient means.

FOURTH: The trustee is further authorized, empowered and directed to distribute, pay over and transfer the residue of said trust estate, as follows:

To Caroline B. Belden, of Hartford, Connecticut, 40% thereof, but if the said Caroline shall not survive the Donor, said 40% shall be distributed to Russell B. Belden, of Hartford, Connecticut.

To Russell B. Belden 40% thereof but if said Russell shall not survive the Donor, said 40% shall be distributed to Caroline B. Belden.

To Fanny J. Cady, of Hartford, Connecticut, the residue thereof, but if the said Fanny shall not survive the Donor, said residue shall be distributed to George F. Cady, of Hartford, Connecticut. If both the said Fanny and the said George predecease the Donor, said residue is to be distributed to Caroline B. Belden and to Russell B. Belden, or to the survivor of them.

FIFTH: The Donor shall have the power to revoke this trust by notice in writing to that effect delivered to the Trustee, and upon receipt of such notice, the Trustee shall transfer, assign and pay over to the Donor all securities, cash or other property in this trust after deducting therefrom all expenses incident to the administration and transfer thereof.

SIXTH: The Trustee is hereby authorized to sell or exchange any of the securities or property in its hands as Trustee and to invest the proceeds of any cash representing principal in its hands in any manner in its discretion. All taxes and expenses of managing said trust fund and protecting the same, including the Trustee's commission, shall be paid by the Trustee first from the income but if the income in the hands of the Trustee shall be insufficient for such purpose the Trustee may charge such expenses and disbursements to the principal of said trust.

SEVENTH: The Donor shall have the right to add any other securities or personal property to this trust and the same shall be held in accordance with the terms hereof, but the compensation of the Trustee upon such addition shall be determined by mutual agreement of the Trustee and the Donor.

EIGHTH: The Trustee is hereby authorized and required to render annually upon request to the Donor an account of the principal and income of the trust hereby created.

NINTH: The Trustee may resign as trustee hereunder upon giving reasonable notice to the Donor of such resignation and shall thereupon deliver to the successor trustee designated in writing by the Donor all property in its hands as Trustee.

the Trust Company transferred all the property referred to in the schedule annexed to it from an account in which it had carried them as attorney to a trustee account, caused all the certificates of stock to be transferred into its name as trustee, and withdrew and invested the various savings accounts except one, Mrs. Dodd signing the necessary papers to accomplish these changes. Thereafter the Trust Company held the property as a trust fund, at times changed the investments without consulting her, paid her bills and from time to time sent her small sums of money. Within a month of the execution of the instrument and at other times Mrs. Dodd said that she had given her money to the Trust Company.

Whatever the natural or technical meaning of the word "securities" the instrument before us makes it perfectly certain that it was here used to include the property, including her savings bank accounts transferred to the Trust Company; for the instrument recites the desire of Mrs. Dodd to transfer and the actual transfer of the "securities set forth" in the schedule which is annexed to it, and in that schedule the property is listed in detail. No question is made that there was a sufficient transfer of the property included in the instrument to the Trust Company to sustain the trust if one was validly created. By the terms of the instrument Mrs. Dodd divested herself of the legal title to the property referred to in it and the schedule and vested that title in the Trust Company, with full power to manage and control it, reserving only to herself the net income for her life, a right to such part of the principal as the trustee might deem necessary for her maintenance, comfort and support, and a power to revoke the trust. She did not thereafter have such control over the use and management of the property that the Trust Company is to be deemed merely her

agent. *Lyle* v. *Burke,* 40 Mich. 499; *Warsco* v. *Oshkosh Savings & Trust Co.,* 183 Wis. 156, 196 N. W. 829. "A power of revocation is perfectly consistent with the creation of a valid trust." *Stone* v. *Hackett,* 78 Mass. (12 Gray) 227, 232. That she intended something more than a mere agency is apparent from the fact that the Trust Company was acting under a power of attorney for her in the management of her affairs when the instrument in question was executed.

The invalidity of the agreement, if it is invalid, must be because it was in fact a testamentary disposition of the property, not executed as required by our statute of wills. That there may be a valid trust where property is transferred to a trustee with a reservation of a life use to the settlor and at his death upon a further trust for other beneficiaries or to pay over to designated persons does not admit of doubt. *Candee* v. *Connecticut Savings Bank,* 81 Conn. 372, 71 Atl. 551; *Blodgett* v. *Union & New Haven Trust Co.,* 97 Conn. 405, 116 Atl. 908; *Burbank* v. *Stevens,* 104 Conn. 17, 22, 131 Atl. 742; *Bromley* v. *Mitchell,* 155 Mass. 509, 511, 30 N. E. 33; *Kelley* v. *Snow,* 185 Mass. 288, 70 N. E. 89; *Lewis* v. *Curnutt,* 130 Iowa, 423, 106 N. W. 914; 1 Perry on Trusts (7th Ed.) p. 119. The essential difference between such a trust and a will is that the former acts at once to vest the interest in the beneficiaries, although enjoyment is postponed until the death of the settlor, while the latter does not take effect until death and until then no interest can vest. 1 Perry on Trusts (7th Ed.) p. 119. "The essential characteristic of an instrument testamentary in its nature is, that it operates only upon and by reason of the death of the maker. Up to that time it is ambulatory. By its execution the maker has parted with no rights and divested himself of no modicum of his estate, and *per contra* no rights have accrued to and no

estate has vested in any other person. The death of the maker establishes for the first time the character of the instrument. . . . Upon the other hand, to the creation of a valid express trust it is essential that some estate or interest should be conveyed to the trustee, and, when the instrument creating the trust is other than a will, that estate or interest must pass immediately. . . . But it is important to note the distinction between the interest transferred and the enjoyment of that interest. The enjoyment of the *cestui* may be made to commence in the future and to depend for its commencement upon the termination of an existing life or lives or of an intermediate estate." *Nichols* v. *Emery,* 109 Cal. 323, 329, 41 Pac. 1089. In such cases as the one before us there is also the further distinction that, under the trust the legal title to the property, with its incidents, and the control and management of it pass to the trustee, whereas in the case of a will, legal title and full control are in no way affected during the life of the testator. *Lewis* v. *Curnutt,* 130 Iowa, 423, 106 N. W. 914.

As substantiating his claim that the instrument before us was really testamentary in its nature, the plaintiff rests largely upon the provision in the trust agreement which gave to Mrs. Dodd the power to revoke the trust and resume possession of the property at any time by giving written notice to the Trust Company. He contends that the existence of this power prevented any vesting of an interest in those who were to receive a gift at the death of Mrs. Dodd and claims that consequently no such interest existed until her death. He cities a number of cases where, in trusts of the general nature of the one before us, a right of revocation was held to exist in the settlor although not expressly reserved. In several of these cases the instrument provided that at the death of the settlor the property

should be distributed in accordance with the terms of his will or in default thereof to his heirs at law or next of kin, and these cases were decided upon the theory that such provisions do not establish gifts to take effect at the death of the settlor, but are mere statements by way of further limitation of the trustee's estate or, to put it another way, are merely a recognition of the disposition of the property which would follow the termination of the trust by the death of the settlor. *Hoskin* v. *Long Island Loan & Trust Co.,* 139 App. Div. 258, 260, 123 N. Y. Supp. 994, affirmed, 203 N. Y. 588, 96 N. E. 1116; *Sperry* v. *Farmers Loan & Trust Co.,* 154 App. Div. 447, 139 N. Y. Supp. 192; *Stephens* v. *Moore,* 298 Mo. 215, 227, 249 S. W. 601. In a few of the cases cited by the plaintiff the trust was held revocable despite a provision that some other person should take at the death of the settlor and in passing it is stated that such persons took no vested interest under the trust. Of these *Frederick's Appeal,* 52 Pa. St. 338, 341, which the plaintiff cites as the leading case, has been so explained and limited by a later decision of the same court as no longer to be regarded as authority. *Wilson* v. *Anderson,* 186 Pa. St. 531, 40 Atl. 1096. That, in such an instrument as the one before us those named as beneficiaries at the death of the settlor, in the absence of a power of revocation, would take a vested interest does not admit of doubt. *Blodgett* v. *Union & New Haven Trust Co.,* 97 Conn. 405, 409, 116 Atl. 908; *Burbank* v. *Stevens,* 104 Conn. 17, 23, 131 Atl. 742; *Thurston, Petitioner,* 154 Mass. 596, 29 N. E. 85; *Crackanthorpe* v. *Sickles,* 156 App. Div. 753, 141 N. Y. Supp. 370; *Gulick* v. *Gulick,* 39 N. J. Eq. 401. Where equity permits a revocation of such a trust in the absence of an express reservation of that power it is not because those named beneficiaries at the death of the settlor would not in any event take

a vested interest, but because in certain circumstances the law permits a revocation and so their interests nominally absolute, are really defeasible. *Rynd* v. *Baker,* 193 Pa. St. 486, 490, 44 Atl. 551; *Aylsworth* v. *Whitcomb,* 12 R. I. 298; *Ewing* v. *Wilson,* 132 Ind. 223, 232, 31 N. E. 64; Bispham's Equity, 111. In the instant case Mrs. Dodd intended to create in those named to take the property at her death a present vested interest save only as she might later decide to divest it by revoking the trust. Her intention, as well as the favor which the law extends to conditions subsequent as against conditions precedent, makes necessary the conclusion that the condition here was of the former class. *Lewis* v. *Lewis,* 74 Conn. 630, 633, 51 Atl. 854; *Lewis* v. *Curnutt,* 130 Iowa, 423, 436, 106 N. W. 914; *Nichols* v. *Emery,* 109 Cal. 323, 331, 41 Pac. 1089; *Keck* v. *McKinstry* (Iowa) 221 N. W. 851. If the instrument is otherwise valid, an estate vested at the creation of the trust in those whose interests were to be enjoyed at her death, only to be divested in the event that she revoked the trust. It is true that in *Blodgett* v. *Union & New Haven Trust Co., supra,* in determining the applicability of the succession-tax statute in the case of a trust established for the life of the settlor, with a gift of the principal to others at her death, we distinguished certain cases where there was a reserved power of revocation, but an examination of the authorities we cite makes clear that we did not mean to say that the mere presence of such a power in a trust characterized the disposition of the property as one that was testamentary or prevented the immediate vesting of the remainder interests.

We have then an instrument under the terms of which the property in question was transferred to a trustee and which created an immediately enjoyable life estate in the settlor and a present vested interest

in those named to take at her death, defeasible only in the event that she exercised a reserved power of revocation. With a striking unanimity of opinion, such trusts have been held valid. *Nichols* v. *Emery,* 109 Cal. 323, 41 Pac. 1089, 50 Am. St. Rep. 43; *Kelly* v. *Parker,* 181 Ill. 49, 54 N. E. 615; *Lewis* v. *Curnutt,* 130 Iowa, 423, 106 N. W. 914; *Keck* v. *McKinstry* (Iowa) 221 N. W. 851; *Brown* v. *Fidelity Trust Co.,* 126 Md. 175, 94 Atl. 523; *Stone* v. *Hackett,* 78 Mass. (12 Gray) 227; *Kelley* v. *Snow,* 185 Mass. 288, 70 N. E. 89; *Jones* v. *Old Colony Trust Co.,* 251 Mass. 309, 146 N. E. 716; *Roche* v. *Brickley,* 254 Mass. 584, 150 N. E. 866; *Wilcox* v. *Hubbell,* 197 Mich. 21, 163 N. W. 497; *Sims* v. *Brown,* 252 Mo. 58, 158 S. W. 624; *Robb* v. *Washington and Jefferson College,* 185 N. Y. 485, 78 N. E. 359; *Allen* v. *Hendrick,* 104 Ore. 202, 206 Pac. 733; *Windolph* v. *Girard Trust Co.,* 245 Pa. St. 349, 91 Atl. 634; *Talbot* v. *Talbot,* 32 R. I. 72, 78 Atl. 535. It is true that by such an instrument the settlor may accomplish to a large extent the purpose ordinarily served by the making of a will, that is, he may determine to whom and under what conditions his property is to be distributed at his death. But we have already pointed out the respect in which such trusts differ from testamentary provisions and the practical safeguard against their use to circumvent the statute of wills lies in the necessity that under them the settlor must largely divest himself of the control and management of his property.

The plaintiff contends that the instrument, while nominally creating a trust, shows upon its face that it was intended, at least as regards the provision for distribution at the death of Mrs. Dodd, merely as a testamentary provision. If that is so, it could not be sustained. *Main's Appeal,* 73 Conn. 638, 48 Atl. 965; *McEvoy* v. *Boston Five Cents Savings Bank,* 201 Mass.

50, 87 N. E. 465. We are not, however, able to sever the provision for the disposition of the property at her death from those having to do with the interest she was to have in it during her life; they are joined, if in no other way, by the power of revocation, which, if exercised at all, could only result in destroying both alike. But, that aside, the language upon which the plain- tiff relies is not sufficiently indicative of a testamentary intent to overcome the general intent and nature of the provisions of the instrument. It does say that "upon the death of the donor this trust shall terminate." But such an expression is by no means an uncommon one to denote that at the death of a person having a life interest the continuing nature of a trust shall cease, leaving only the disposition of the principal to be accomplished; and to construe it literally, would be to attribute to the settlor an intent to defeat one of the great objects which it was established to accomplish. *Wilcox* v. *Hubbell,* 197 Mich. 21, 39, 163 N. W. 497. Nor is it unusual in such trusts to find provisions like the one herein contained, that on the death of Mrs. Dodd, the trustee is to pay to the executor or administrator such sums as may be found necessary if her estate is insufficient, to settle her debts, administration expenses and taxes; *Lewis* v. *Curnutt,* 130 Iowa, 423, 435, 106 N. W. 914; *Brown* v. *Fidelity Trust Co.,* 126 Md. 175, 94 Atl. 523; indeed, the clear recognition here appearing of a distinction between the property transferred to the trustee and such property as would compose her estate militates strongly against attributing to her a testamentary intent in the provisions of the agreement. The words "legacies," "legatees" and "residue" are indeed more apt in a will than in a trust instrument, but their use in such an agreement as the one before us is not unnatural and little weight is given to them in view of its general

tenor and effect. Nor would we be justified, if by reason of the equivocal language used a construction of the agreement which would uphold it is reasonably open, in entirely defeating the intent of Mrs. Dodd to benefit those to whom she gives the property at her death by holding it to be invalid. *Wilcox* v. *Hubbell,* 197 Mich. 21, 35, 163 N. W. 497; *Talbot* v. *Talbot,* 32 R. I. 72, 94, 78 Atl. 535.

The two cases which perhaps go as far as any to support the claims of the plaintiff are *McEvoy* v. *Boston Five Cents Savings Banks, supra,* and *Russell* v. *Webster,* 213 Mass. 491, 100 N. E. 637. In the former case an express power of revocation was reserved to the creator of the trust and of this the court said: "This in itself would not render it invalid if the instrument otherwise seemed intended to divest her of her absolute control of the property, as owner or as *cestui que trust* during her life, and to deprive her of the rights of a beneficiary who has a perfect power of disposition under the trust"; the court then went on to point out: "This [the trust agreement] gave her the right to demand any part or the whole of the money at any time, for any use that she chose to make of it. It left her the sole and beneficial owner of it, with an absolute power of disposition as long as she lived. As against her, therefore, the only practical effect of the instrument during her lifetime was to give the trustee a right to collect and hold the property until she should ask for it. Her rights as beneficial owner during her life were not limited in any material way. . . . It follows that the only material effect of the instrument was testamentary, and that it cannot be given effect under our statutes, which permit a testamentary disposition of property only by a duly executed will." In *Russell* v. *Webster, supra,* a certificate of stock was transferred to the defendant who gave a receipt for

it, reciting that it was the property of the decedent, placed in his hands for safe-keeping and to be redelivered on demand, the decedent to receive all dividends on it and in case of his death the certificate to be transferred to the plaintiff. The court said: "It is true that the stock stood in the name of this agent, but he was obliged to deliver it to its owner at any time that owner might ask for it. The entire income was payable to Sawyer [the owner], even without demand, and he was as free to dispose of it as when the stock stood in his own name. During his life he retained the entire dominion and control of the stock, principal and income, as its general owner, and Webster was merely his depositary, holding the property subject to his order. He intended that no title to or interest in the stock should pass to the plaintiff until after his death, but that it should then become hers in the event that he did not retake it from the possession of Webster. This was an attempt to make a testamentary disposition of the property, which under our statutes he could accomplish only by a duly executed will." The case before us is plainly distinguishable from either of these, because here the agreement, so long as it remained unrevoked, vested the title to and the management and control of the property in the trustee, giving to Mrs. Dodd only the specific right to receive the income from it during her life and such part of the principal as the trustee in its discretion might deem necessary for her maintenance, comfort and support.

The appeal claims error in certain rulings on evidence, but these are not pressed in argument and they are not so stated in the finding that we could consider them; in one paragraph numerous rulings are stated and the reason of appeal addressed to it is general; *Doolan* v. *Heiser,* 89 Conn. 321, 94 Atl. 354; and as

regards the only other ruling complained of, no exception appears to have been taken. *Rohde* v. *Nock,* 101 Conn. 439, 126 Atl. 841.

There is no error.

In this opinion the other judges concurred.