## PETER FIDORSKI, ADMR.
*vs.*
## VICTORIA MARYESKI

Court of Common Pleas   New London County   File No. 9569

MEMORANDUM FILED JANUARY 6, 1943.

*Jesse Greenes,* of New London, for the Plaintiff.

*John J. McGarry* and *William C. Fox, Jr.,* of New London, for the Defendant.

Memorandum of decision in action involving oral trust.

FITZGERALD, J.   Anna Fidorski, hereinafter referred to as the decedent, died intestate at New London on June 16, 1941.   Plaintiff, as administrator upon the estate of the decedent, his deceased wife, brings this action to recover of the defendant an alleged balance of $600 claimed to be due the estate by the defendant from money turned over to the latter by the decedent in her lifetime.   The theory adopted in the complaint is that the decedent, a short time before her death (paragraph 2) "placed in the hands of the defendant, as her agent, the sum of $950.00 with instructions that said sum was to be used by the defendant to pay the [decedent's] hospital bills, doctor bills, and such other expenses as the [decedent] might direct"; and (paragraph 3) "Thereafter, and until the death of the [decedent] on June 16, 1941, the defendant paid such bills out of said fund as the [decedent] directed her to pay, and following the death of the [decedent], the defendant paid other bills chargeable to the [decedent's] estate"; and (paragraph 4) "Following the payment of all such bills, the defendant had on hand a balance of approximately $600.00 out of said fund" which she refuses to turn over to the plaintiff in his representative capacity.

The defendant, in her answer, denies the allegation of agency and pleads by way of special defense that on or about June 16, 1941, the decedent delivered over to her certain "personal property"; that (paragraph 2) "Said personal property was delivered to and placed in the possession of the

defendant by the [decedent] in trust for certain uses and pur-
poses named by the [decedent]"; that (paragraph 3) "The de-
fendant has completely performed and discharged said trust
in accordance with the uses and purposes as named by the
[decedent], and was not indebted to the [decedent's estate]
at the commencement of this action." A subsequent amend-
ment to the foregoing special defense merely recites that the
purpose of the alleged trust was to provide for the necessities
of the decedent during her life and upon her death "the balance
thus remaining of said trust principal" was to be paid over
"to certain named persons....in stated amounts."

Plaintiff, in his reply, denies the allegation of trust. In
compliance with plaintiff's motion for disclosure filed before
trial, defendant disclosed that the "personal property" in
question was cash in the amount of $900 and that the "claimed
trust" was not evidenced by a writing.

Plaintiff and the decedent were married in 1924 and there
are no children of the union. The decedent had not been
in good health for some three or four years before her death,
in her late fifties, which resulted from a tumor. Plaintiff con-
cedes that the decedent was mentally sound at the time of
the transaction hereinafter considered. So also, he concedes
that no undue influence was exerted upon the decedent by
the defendant or by any other person.

The evidence disclosed that in May, 1941, the decedent
caused to be closed out her account in the Savings Bank of
New London. At this time the decedent was not a well
woman and she executed the withdrawal of the funds in
her account by signing a withdrawal slip, duly witnessed,
authorizing a woman friend as her agent for presentation
thereof and acceptance of the money from the bank. The
fund thus withdrawn was about $1,200 and was turned over
by the agent to the decedent.

Thereafter the decedent sent word to the defendant and
requested that she pay her a visit. The decedent and the
defendant had been close friends for more than 30 years.
At the subsequent visitation (late May or early June, 1941)
the decedent turned over the sum of $900 to the defendant
and requested the defendant to pay out of the fund all doc-
tors' and hospital bills as well as donations for religious pur-
poses, and to turn the balance over to her sister and her
sister's adopted daughter. A very short time thereafter the

decedent was removed to the hospital and died on June 16, 1941.

The defendant, in compliance with the directions of the decedent, in fact made all specified payments from the fund in her possession. Some medical items were paid before the decedent died, the remaining were paid after. The balance of the fund remaining after the payment of medical and religious items was turned over by defendant to the decedent's sister and her adopted daughter per instructions. About $400 went into the latter channel.

It is true that the decedent did not want her husband, the plaintiff herein, to know of this transaction. Certain aspects of the evidence would warrant the conclusion that the plaintiff and the decedent did not repose any great amount of trust and confidence in each other. The plaintiff's remarriage three weeks after the decedent's death gives rise to implications that require no discussion beyond this passing reference.

The proceeds of an insurance policy on the life of the decedent were more than ample to pay the funeral expenses and such expenses have been paid therefrom by the plaintiff and the balance pocketed by him as named beneficiary. There are no claims of any character outstanding and unpaid against the estate.

The claim of the plaintiff administrator that the money turned over by the decedent to the defendant represented his own earnings saved over a period of years by the decedent is rejected by the court. The subordinate facts do not permit this finding even if the court were to read into the complaint a theory of action that is not expressly alleged therein. It is expressly found that the money turned over by the decedent to the defendant represented her own money in the same manner as the household furnishings were admittedly her own separate property derived from an earlier marriage years ago.

It seems clear that the decedent shortly before her death manifested an intention to create, and did create, a valid oral trust. She turned over complete control and possession of the money to the defendant with sufficiently clear directions as to its uses. It is true that the word "trust" or "trustee" was not employed. But that is not fatal. The woman was ill. She knew intuitively that her time on this earth was short. It was short. She expressly stated to the defendant that she

was adopting the described method of payments and gifts because she knew that her wishes and intentions would be honored. They were honored. Defendant on cross examination testified that if the decedent had at any time requested her to give back the money she would have done so. This aspect is not fatal to the claim of the creation of a valid trust. For example, the fact that a settlor of a trust may expressly reserve to himself the right of revocation in no way defeats the creation of a valid and otherwise enforceable trust when the right of revocation has never been exercised.

The following points are stressed:

1. A trust *de* personal property may be created orally. *See McDonald vs. Hartford Trust Co.,* 104 Conn. 169, 184, and cases there cited, including 3 *Pomeroy, Equity Jurisprudence* (4th ed., 1918), §1010.

2. The settlor must manifest an intention to create a trust. An undisclosed state of mind is not sufficient; neither is a secret intention on the part of the settlor of any efficacy. But no particular form of words is necessary for the manifestation of the requisite intention. Whether or not the word "trust" or "trustee" is or is not employed is of no special significance. *See* 1 *Scott, Trusts* (1939) §§23, 24.

3. Assuming that the decedent reserved unto herself the right to revoke the arrangement with the defendant, such would not defeat the creation of a valid trust. "A power of revocation is perfectly consistent with the creation of a valid trust." *Stone vs. Hackett,* 78 Mass. (12 Gray) 227, 232, quoted by our Supreme Court in *Cramer vs. Hartford-Connecticut Trust Co.,* 110 Conn. 22, 28. In the case at bar it would appear that the decedent said nothing on the revocatory aspect and in any event the defendant carried out to the letter her instructions, there having been no attempted revocation before the decedent's death.

4. The fact that the decedent, by virtue of the arrangement with the defendant, accomplished "to a large extent the purpose ordinarily served by the making of a will" is not controlling. It is expressly found that she divested herself of the control and management of the fund in favor of the defendant for designated purposes. *See Cramer vs. Hartford-Connecticut Trust Co., supra,* p. 32.

5. Plaintiff's complaint alleges that the defendant was to

hold and disburse the money for the decedent in the role of agent. Since most of the fund was disbursed after the decedent's death, and death *ipso facto* ends an agency relationship, this claim is of vital importance. In argument plaintiff speaks of bailment rather than agency. Without pointing out the distinctions between bailment and agency, and distinctions there are, the court holds and rules that the relationship between the decedent and the defendant *de* money in question was that of settlor and trustee and not bailor and bailee or principal and agent. As to the distinctions between a bailment and trust relationship and an agency and trust relationship reference is made to 1 *Scott, Trusts* (1939) §§5, 8; 1 *Bogert, Trusts and Trustees* (1935) §§11, 15; *Restatement, Trusts* §§5, 8.

6. To conclude that the defendant occupied a status other than a trustee would do violence to the facts and necessarily result in a gross miscarriage of justice.

The exigencies of the case do not require further discussion and comments. Judgment will enter for the defendant to recover her costs.