**LIBERTY NAT. BANK et al. v. HICKS et al.**

No. 9598.

United States Court of Appeals
District of Columbia Circuit.

Decided Dec. 13, 1948.

Rehearing Denied April 11, 1949.

Mr. Charles B. Murray, of Washington, D. C., Guardian ad litem for infant appellants John Hicks IV, Robert Francis Hicks and Philip Eckman Hicks.

Mr. Frederic N. Towers, of Washington, D. C., with whom Mr. Norman B. Frost, of Washington, D. C., was on the brief, for appellant Liberty National Bank, Trustee.

Mr. Leslie C. Garnett, of Washington, D. C., with whom Mr. Samuel F. Beach, of Washington, D. C., was on the brief, for appellees.

Before STEPHENS, Chief Judge, and CLARK and GRONER, Circuit Judges.

PER CURIAM.

The case is this: Appellee, John Hicks, 3rd, was first married to Harriet Ann Hicks. There were three children. Sometime in 1937 marital troubles arose; Hicks and wife separated; and the latter began proceedings for divorce and support for herself and the children. Before the suit was tried, counsel for the respective parties entered into negotiations looking to an amicable property settlement. The negotiations resulted in the execution by John Hicks of two trust agreements. In one a Wisconsin bank was named trustee; in the other, a District of Columbia bank. As we are not concerned with the Wisconsin trust, no further notice need be taken of it or its conditions. The District of Columbia trust made in 1938 embraced a number of shares of stock (said to be worth $60,-000) of a Wisconsin corporation, which, upon execution of the trust, were delivered by Hicks to the trustee. Hicks reserved to himself for life the income of the trust, and the trust instrument provided that it should terminate on his death, at which time all the assets, including undistributed income, should be distributed as follows: one-half to Hicks' three children, share and share alike; provided, however, that if any of the children should predecease Hicks, leaving issue, such surviving issue should take the share of his parent. In the event none of the children nor issue of any survived, the one-half of the trust property set apart for them, on Hicks' death, should be distributed as directed by Hicks' will, and the other half should in any case be distributed according to his will, or lacking a will, to his heirs-at-law according to the statutes of descent in the District of Columbia. The agreement recited that the trust was created by the donor (Hicks) after full consideration and advice, and was not to be *altered, amended, or revoked.*

It contained two provisions which, in the main, furnish the grounds on which Hicks relies to maintain this suit to set the trust aside. These are as follows:

"The provisions herein made are intended for the personal protection and welfare of the beneficiary hereof and shall not be susceptible of assignment, anticipation, hypothecation or seizure by legal process. * * *"

"The Trustee may in its discretion advance to and/or use and apply for the benefit of the beneficiary * * * such amounts out of the principal serving the income of such beneficiary as the Trustee shall deem necessary by reason of accident, illness, insufficiency of income or other adversity, for the maintenance or other necessities or comforts of the beneficiary. Such advances shall be charged to the beneficiary receiving the same and shall be liquidated out of income subsequently distributable to such beneficiary. * * *"

On March 12, 1941, Harriet Ann Hicks and John Hicks, 3rd, were divorced in Washington, and on February 6, 1942, John

Hicks married Eloise Reese Hicks, and one child was born of that marriage. Sometime thereafter Hicks executed an instrument in writing revoking and annulling the trust, and in line therewith notified the trustee-bank that in order to secure the future of his present wife and child he had given to the former, one-half the corpus of the trust, i. e., the one-half he had reserved the right to dispose of by will. He thereupon requested the bank to deliver to her and to him, the entire corpus. The bank refused. Whereupon Hicks and his present wife brought this suit to have the trust as a spendthrift trust declared void as against public policy.

The District Court, without opinion, gave judgment for Hicks and his present wife on the pleadings. We are of the view that this was wrong and that the judgment must be reversed.

As we have shown, the trust was created as the result of a property agreement prior to divorce, and afforded the means whereby Hicks, in anticipation of separation and divorce, undertook to discharge a part of his obligation of support to his three infant sons. In doing so he inserted in the trust-instrument certain provisions for the protection and enforcement of his reserved life estate which he now claims are against public policy and void. And as the result of this he now insists the whole trust and all its provisions are equally void and of no effect.

In considering this proposition, it should be borne in mind that no creditor of Hicks is suing to impeach the trust. He alone, it is, who is seeking to take back as his own one-half of certain shares of stock which more than 10 years ago, by irrevocable agreement in writing, he transferred and delivered in trust to his children, as well as the other half of the shares which under the terms of the trust were to be distributed according to his will or, lacking his will, to his heirs at law.

In short Hicks' present position is that because he attempted in the trust agreement to free his reserved life interest from liability for his debts and to give to his trustee power, in its discretion, to use the capital of the trust for his benefit in an emergency, the whole trust is illegal; or, if not illegal, that it shows an intent to give the children only what is left at his death; thereby making the provision in favor of the children testamentary in character and, hence, subject to revocation at his pleasure. At this point it may not be amiss to say that, if these grounds of illegality in the trust were being urged by a creditor of Hicks, we would have a more difficult problem. But coming alone from Hicks they present the questions in a different aspect.

In Hurt et al. v. Gilmer et al., 59 App.D. C. 282, 40 F.2d 794, 795, we had a case in which one Craddock assigned and delivered to a trustee certain securities on condition that the income therefrom should be paid to one Fannie Hurt during her life. Upon the death of Fannie, the trustee was to convert the property into cash and distribute the proceeds to her three sisters, unless any of the sisters should then be dead "leaving children surviving, in which event such surviving children shall be entitled to the shares thereof to which the deceased parent would have been entitled if then living." Thereafter all of the living beneficiaries joined with the settlor in attempting to break the trust and to deliver the property to Fannie free of the trust. There we said:

"In our opinion the ruling of the lower court was right. The trustee, by accepting the trust, became obligated to each beneficiary who acquired under its terms an interest or estate, whether vested or contingent in the trust property. This classification included Fannie P. Hurt, who was granted a vested life estate in the property; and her three sisters, who were granted a contingent estate in remainder conditioned upon their surviving her; and also the born and unborn children of the sisters of Fannie P. Hurt who predeceased her leaving children living at the time of her decease. The identity of such children as might ultimately take under the trust, like that of the surviving sisters who similarly might take thereunder, could not be known until the death of Fannie P. Hurt, but that fact did not prevent the vesting of such interest upon the happening of the contingencies upon which they were made to depend."

634

The principle decided in the above case is that a trust once validly constituted may not thereafter be terminated without the consent of all the cestuis que trust. This includes not only those specially named but those then unborn who may take on the expiration of the trust according to the terms. That the trust in the case we are considering was validly constituted we have no manner of doubt. The property of the trust belonged to Hicks and he might have then and there passed it or any part of it on to his children and by the same token might validly have attached conditions to the gift. That in the present instance the conditions were that it was to vest absolutely in the children and their issue only at his death no more tainted it with invalidity than if he had given it outright. This brings us then to consider whether the provisions in the trust attempting to immunize Hicks' life interest in the income from the claims of creditors, or that other provision authorizing the trustee in its discretion to use the principal of the trust, if necessary, in Hicks' behalf rendered the trust and all of its provisions void *from the beginning*. As we have seen, it is on the basis of this proposition that Hicks asserts the right to annul the trust and reclaim the corpus. To justify this counsel have cited many cases holding that a spendthrift provision made by the settlor in favor of himself as beneficiary is against public policy and accordingly is void and ineffectual against creditors, and this, we believe, is the universal rule; but we are referred to no case holding either that the settlor, where there are no creditors, can invoke this principle for his own benefit or that such provisions make the entire trust void from its inception. The correct rule in the latter respect we think, is stated in Scott on Trusts (Vol. 1, Sec. 65.1) in these words:

"Where there is a provision in the terms of the trust imposing a restraint on the transfer by a beneficiary of his interest and the provision is illegal, the provision fails, but the whole trust does not fail, since provisions like this can be separated from the other provisions without defeating the purpose of the settlor in creating the trust."

Applying this rule to the facts of this case, we think that the spendthrift provisions of this trust, even if subject to attack by creditors, are severable and do not destroy the whole agreement. And we think also that Hicks, under the facts we have recounted cannot be heard to challenge and destroy the trust. As to the first proposition it is enough to say that if the rule of severalty properly applies in cases in which creditors are involved, how much stronger are the reasons for its application where no creditors are concerned but only the settlor of the trust claiming the right to change his mind to the hurt of beneficiaries whose rights were established by a solemn instrument executed by him.

Hence it seems to us it would be bootless to cite cases on the point and especially since we are unable to find any to contrary. Suffice it to say we are of opinion that the trust in issue here appears clearly in its legal aspect to pass to appellant's children a valid present interest in a future estate and this obviously was the intent of the settlor. It was made and was declared irrevocable—not as a matter of grace but as a matter of agreement—and by its terms was effective from the beginning, though possession was postponed for the life of the donor. In that view it was effective as to the children's interest, from the time of its making. Accordingly appellee's contention that the trust provision for the children is testamentary and revocable cannot be sustained. Scott on Trusts, Vol. 1, Sec. 56.5. Roberts v. Taylor, 9 Cir., 300 F. 257, Cramer v. Hartford-Connecticut Trust Co., 110 Conn. 22, 147 A. 139, 73 A.L.R. 201; McKnight v. Bank of New York & Trust Co., 254 N.Y. 417, 173 N.E. 568; Fidelity Trust Co. v. New York Finance Co., 3 Cir., 125 F. 275.

The weakness of Hicks' position is that he seeks to apply here for his own benefit certain rules of law or public policy designed to prevent a debtor from tying up his property so that it is immune from attachment by a creditor. But Hicks is not in the position of a creditor, nor is he entitled to invoke a provision of his own trust, unlawful as to his creditors, to strike down

other provisions for the benefit of his children, valid when made and valid now. And we are of opinion that Hicks' second wife and co-plaintiff in this suit, to whom he now seeks to give one-half of the trust property, is not in legal effect a creditor and has no better right to set the trust aside than has Hicks. Hackley v. Littell, 150 Mich. 106, 113 N.W. 787.

█ Enough, we think, has been said to make it clear that as to the one-half of the trust specifically earmarked to the benefit of the three children of the settlor or their issue, the terms of the trust are irrevocable. To this should be added the further conclusion that as to the other half the same rule must be applied. For as to it, as we have seen, Hicks reserved no right of disposition except by last will, in the absence of (failing) which it is to pass to his heirs-at-law. This provision of the trust shows, we think, that as to it Hicks intended to and did reserve only the right to dispose of it by testamentary appointment. This right continues, but, except as it provides, Hicks in creating this trust retained no control or estate, save his life interest in the income. His present effort, contrary to the terms of the trust, to alter and amend its limitations, must, therefore, be held for naught. This is the rule applied by the Maryland Court of Appeals in Allen v. Safe Deposit & Trust Co., 177 Md. 26, 7 A. 2d 180, which we adopt and approve.

Reversed and remanded with instructions to dismiss the complaint.

### On Petition for Rehearing.

In the latter part of December—shortly after our opinion in this case came down—appellee filed a petition for rehearing which now, upon due consideration, we think must be denied. One point is made in the petition, however, which we think proper to notice. Appellees state we were in error in assuming that the trust in issue was made subsequent to the proceedings for divorce brought by Mrs. Hicks against her husband. And also that we were in error in saying that Hicks made two trust agreements, the one in Wisconsin and the one in issue in the present suit.

As to all of this it is enough to say that, granted we were mistaken in the respects mentioned, neither error is or is claimed to be in any degree material or in any way affects the conclusions announced in our opinion. And to this we think it proper to add that the case was heard below and by us on the pleadings, and that we took the two statements from the facts pleaded in the answer of the guardian ad litem which, in the respects mentioned, were never challenged.

Petition denied.