ALFONSE C. FASANO, ADMINISTRATOR D.B.N. (ESTATE OF UMBERTO MARESCA) v. MARIA A. MELISO ET AL.

BALDWIN, KING, MURPHY, MELLITZ and SHEA, Js.

Argued April 9—decided June 3, 1959

*Alfonse C. Fasano* and *Alfred E. DeCapua,* for the appellant (plaintiff).

*Robert C. Zampano,* with whom was *Joseph J. Mager,* for the appellees (defendants).

KING, J. Umberto Maresca, the plaintiff's decedent, on March 1, 1945, opened an account, hereinafter referred to as account A, in the Connecticut Savings Bank in his name as "Trustee for Ralph U. Meliso," a defendant herein and a minor son of the named defendant, the decedent's sister, Maria A. Meliso. On opening the account, the decedent de-

posited $18.80 and filled out and signed a trustee signature card, supplied by the bank, which included information concerning the beneficiary, such as his name, residence and birthplace. It further stated: "The principal and interest of this account are the property of, and to be drawn by, the Trustee during the Trustee's life. At the death of the Trustee, the principal and interest of said account are to be paid to the Beneficiary." When the decedent returned to the home of his sister Maria, where he lived, he handed the passbook to her and stated that he had started a trust fund for Ralph. On December 31, 1945, he asked his sister to go to the same bank and to obtain for him a trustee signature card so that he could start a trust fund for Cary, a younger son of Maria and also a defendant. This she did, and during his lunch hour the decedent signed a signature card and opened an account, hereinafter referred to as account B, for Cary. It was identical in its terms with account A, and an initial deposit of $140 was made. After the first few deposits, like deposits were made in each account, and at the decedent's death the amount on deposit in each account was $3670.76 except for an interest credit of $7.83 in account B. The deposits were made over a period of six years and ranged from $5 to $50 in amount. No withdrawals were made from these accounts.

The plaintiff instituted this action to recover, as the property of Maresca's estate, the balance on deposit in each account at his death. Recovery is also sought of the amount then on deposit in a third account, hereinafter referred to as account C, but the facts surrounding this account differ markedly from those surrounding accounts A and B, and consequently the claim as to account C will be separately discussed later. The fact that accounts A and B

were opened and stood on the books of the bank in the name of the decedent as trustee for the respective beneficiaries is not, alone, conclusive of the ownership, either at the decedent's death or at any time prior thereto, of the money deposited. Indeed, it is not conclusive of whether any trust at all was established. 1 Scott, Trusts (2d Ed.) p. 477; *Stamford Savings Bank* v. *Everett,* 132 Conn. 92, 94, 42 A.2d 662. It is perhaps true that a savings account standing in the name of a donor as trustee for a named beneficiary is to some extent sui generis in the law of trusts. But it is settled law that even in such forms of trust, unless some interest in the fund was transferred to the beneficiary during the decedent's lifetime, there can be no valid trust of any kind, since there would be nothing more than an attempted testamentary disposition of the trustee's own property in a manner forbidden by the Statute of Wills. *Bowen* v. *Morgillo,* 127 Conn. 161, 166, 14 A.2d 724; *Bachmann* v. *Reardon,* 138 Conn. 665, 667, 88 A.2d 391; 1 Scott, op. cit., pp. 422, 423, 441, 476; Restatement, 1 Trusts (2d Ed.) § 56.

Under the provisions of the statute (now Rev. 1958, § 36-110; formerly Cum. Sup. 1939, § 1216e), a savings bank is prohibited from accepting a deposit made by one person in trust for another "unless the same is accompanied by a statement signed by the depositor giving the name and residence of the beneficiary and setting forth to whom the principal and interest of such deposit belong." Pursuant to the mandate of this statute, the bank had available for depositors who wished to open a savings account, in the name of one person as trustee for another, two forms of signature card. One was the signature card used by the decedent, already quoted. The other was substantially the same except that it

stated that "[t]he principal and interest of said deposit account (including all deposits hereafter made by the undersigned to the credit of said account) belong to said beneficiary, but the undersigned during his lifetime reserves the right to withdraw the same in whole or in part at any time." Of course the plaintiff was unable to prove that as a fact this second form of statement of ownership was actually brought to the attention of the decedent and rejected by him. In the absence of proof to the contrary, however, a person is presumed to know and understand the contents of a simple instrument which he signs. *Dinini* v. *Mechanics Savings Bank,* 85 Conn. 225, 228, 82 A. 580.

It follows that as of the time each of the accounts, A and B, was opened, the decedent's intention must have been as contained in the statement of ownership, that is, that the money on deposit was wholly his and should remain wholly his during his lifetime and that what, if anything, remained on deposit at his death should then, and not before, belong and be paid to the named beneficiary. As of the dates the accounts were opened, there was no evidence whatsoever of any intention that title to them or any interest in them should leave the decedent prior to his death. His intention clearly was to dispose of whatever might be in the accounts at his death in a manner forbidden by the Statute of Wills. *Main's Appeal,* 73 Conn. 638, 644, 48 A. 965. That such a scheme was wholly testamentary and wholly invalid is settled law. *Cramer* v. *Hartford-Connecticut Trust Co.,* 110 Conn. 22, 32, 147 A. 139; 1 Scott, op. cit., pp. 483, 484. To paraphrase the language of *Hatheway* v. *Smith,* 79 Conn. 506, 523, 65 A. 1058, "[t]he only intention that can be gathered from the language of . . . [the decedent in the statement of

ownership] is an intent to dispose of . . . [his] property [at his death] in a manner forbidden by the statute of wills." The Statute of Wills was enacted with the basic purpose of making certain that a testator's intentions as to the disposition of his property would be carried out after his death. Indeed, this very case is an illustration of the danger of permitting the devolution of property to depend upon oral testimony, especially where, as here, that oral testimony largely comes from the lips of those having a pecuniary interest in the outcome of the case. The defendants' claim that each account, when opened, constituted a valid revocable trust is unsound. Neither a valid revocable trust nor any other type of valid trust can arise where, as here, sole ownership of the funds on deposit is in the person named as trustee. *Bowen* v. *Morgillo,* 127 Conn. 161, 166, 14 A.2d 724. This complete retention of ownership would make impossible a valid irrevocable trust such as was construed and upheld in *Minor* v. *Rogers,* 40 Conn. 512, 519. Whether, had the second form of statement of ownership been used, there would have been a valid revocable trust under the theory of cases such as *Cramer* v. *Hartford-Connecticut Trust Co.,* supra, 34, notwithstanding that complete control and management was in the donor-trustee, is a question not before us, since no such form was used. See 1 Scott, op. cit., § 57.2; Restatement, 1 Trusts (2d Ed.) § 58.

The court found that the decedent delivered the passbooks to Maria; that she usually kept and had control of them, although she turned them over to the decedent whenever he personally wanted to make a deposit; that usually Maria made the deposits for the decedent; that some funds were, to the decedent's knowledge, placed in the accounts by Maria,

by her husband, and by the minor beneficiaries themselves; and that the decedent and Maria, to the knowledge of other members of the family, were trying to build the accounts up to $4000 each, in order to take care of the educational needs of the beneficiaries. There was no finding as to who, if anyone, reported the interest on these deposits, as income, to the federal income tax authorities.

It cannot be said that the decedent, as the absolute owner of each account, was not privileged to make a valid inter-vivos gift of it to the named beneficiary, just as he could have given away any other personal property he owned. While the best method of carrying out such a purpose would be to change the account to make it stand in the name of the donee as sole owner, this was not the only way in which such a gift could be validly made. A valid inter-vivos gift of personal property such as a bank account requires two things: a delivery of the possession of the property to the donee and a present intention that the title to it should pass immediately to him. It is not necessary that there should be a manual delivery of the passbook or that delivery should be made to the donee in person, nor is there any particular form or mode in which the transfer must be made or by which the intention of the donor must be expressed. *Guinan's Appeal,* 70 Conn. 342, 348, 39 A. 482; *Main's Appeal,* 73 Conn. 638, 640, 48 A. 965; *Stamford Savings Bank* v. *Everett,* 132 Conn. 92, 94, 42 A.2d 662; *Kriedel* v. *Krampitz,* 137 Conn. 532, 534, 79 A.2d 181; *Bachmann* v. *Reardon,* 138 Conn. 665, 667, 88 A.2d 391; *Driscoll* v. *Norwich Savings Society,* 139 Conn. 346, 349, 93 A.2d 925.

One of the court's conclusions was that the "accounts are valid and enforceable trusts." This conclusion indicates that the court considered these so-

called trusts valid from their inception notwithstanding the provision on the signature card for the decedent's retention of ownership. If this were the only conclusion reached on the subordinate facts, the court would have applied an erroneous rule of law which was material to the case and the judgment could not stand. *State* v. *Cesero,* 146 Conn. 375, 379, 151 A.2d 338. The court, however, also concluded (a) that the plaintiff had failed to sustain the burden of proving that the accounts belonged to the estate of his decedent; (b) that the funds in the accounts belonged to the beneficiaries named in them; and (c) that the decedent intended to transfer, and legally and effectively provided for the valid transfer of, the funds in the accounts to those beneficiaries. It appears that each of these conclusions independently accounted for the judgment. It follows that if one or more of them was correct, the judgment should stand, even though the court also based its decision on an additional reason which was erroneous.

The reasonable construction of conclusions (a), (b) and (c), above, is that the decedent made an inter-vivos gift of the accounts to the beneficiaries. This the decedent could do at any time, since they were his own outright property. The subordinate facts, as previously set forth, support a finding of an inter-vivos gift by reason of a delivery of each passbook to Maria on behalf of the donee and of a present intention that title to each account should pass immediately to the beneficiary of it. That Maria, her husband and her sons deposited their own money in the accounts also lends support to this view. While the court would have been fully warranted in concluding from the subordinate facts that the decedent's intention in delivering the passbooks to Maria was not to pass title immediately to the

beneficiaries but was either to give her the passbooks for safekeeping or to deliver them to her with an intention of establishing some sort of so-called trust, it cannot be said, as matter of law, that the court could not have drawn the conclusion it did—that inter-vivos gifts were made. The other conclusions, to the effect that the plaintiff failed to prove that either account was the property of the estate of the decedent and to the effect that the accounts belonged to the respective beneficiaries, are consistent with the conclusion of executed inter-vivos gifts. It follows that the court was not in error in deciding, as it did, that the plaintiff was not entitled to recover the amounts on deposit in the accounts.

The third account, C, was opened on January 13, 1953, by the defendant Maria, in the same bank as the others, in her name as "Trustee for Alphonse Louis Meliso," her youngest son and a defendant herein. The signature card and the statement of ownership were in the same form as those executed by the decedent in opening accounts A and B. The decedent was the source of some of the money deposited in this account. There is, however, nothing in the statement of ownership or elsewhere to indicate that he owned any of the money in the account or that he was in any way connected with it. As far as appears, he made gifts of money for deposit in the account with full knowledge of its terms. *Candee* v. *Connecticut Savings Bank,* 81 Conn. 372, 374, 71 A. 551. The conclusion of the court that the plaintiff failed to prove that any of the money in this account belonged to the estate of the decedent is fully supported by the finding.

There is no error.

In this opinion the other judges concurred.