Mr. Justice James
delivered the opinion of the Court:
In this bill the complainants set forth that on the 8th day of July, 1891, they recovered in this court a judgment against the defendant, Francis K. Dunlop, for $110.72, with interest from April 1, 1891; that they afterwards sued out a writ of fi.fa. thereon, which was returned nulla bona; that said judgment never has been satisfied, and said defendant has no property in this District out of which it can be made by execution; that in the year 1872, James Dunlop died *237 in this District, leaving his last will and testament, and a codicil, which were duly admitted to probate in the special term of this court for Orphans’ Court business, on the 15th day of May, 1872; that by said.will .certain bonds, and by said codicil certain moneys, were left to defendant, William L. Dunlop, in trust for said Francis, as appears by the will and codicil which are made part of the bill. The bill thereupon prays discovery by the defendant, William Dunlop, of the income received by him for Francis, for a receiver, who shall apply the said income to the payment of said judgment, and that a portion of such stock and bonds may be sold, and the proceeds applied to the same purpose.
The provisions of the will relating to Francis Dunlop are as follows:
“ I give to my son, Francis K. Dunlop, for life, to be held by my son, William L. Dunlop, in trust for the life of Francis, six thousand dollars Hannibal & St. 'Joseph, Missouri, six per cent. State bonds; also eight thousand dollars Nashville and Chattanooga Railroad, bonds, guaranteed by the State of Tennessee, six per cent.
“ Also six thousand State of Tennessee five per cent, bonds. My son William is to hold in trust for said Francis for life the said stocks, for his maintenance and support, to pay to him the interest accruing thereon, or so much as is needful, for that and for the like purpose, to sell the whole or any part of the principal, as in his discretion he may think best, and at the death of Francis, to pay over the same, in equal shares, to the brothers and sister of Francis, it being supposed by me Francis will never marry, and' I commend Francis to the care and protection of his brothers and sister.”
The codicil, so far as it related to Francis, was as follows: “ It is my will and desire that out of my clear personal estate there shall be added to the fund set apart for the support of my son, Francis K. Dunlop, the further sum of twenty thousand dollars, to be rpanaged by my son, William, for the use of Francis during his life, and at the death of Francis, *238 the principal to go in perpetuity to William, my son and executor, his heirs and assigns.”
The first question relates to the construction of these instruments. The will contains several substantive matters. Without reference to their order, they are, first, a bequest in trust for Francis for his life; second, that this bequest shall be for his maintenance and support; third, that after his death the corpus of the bequest shall go to his brothers and sister; fourth, that the trustee may sell these bonds at his discretion. The style of this instrument is inartificial, but when the number and nature of the subjects are considered, we think it is to be read as if it ran as follows: These stocks are to be for the maintenance of Francis; the interest thereon, or- so much as is needful for that and for the like purpose, is to be paid to him; the whole or any part of the principal, as the trustee may think best, may be sold; at the death of Francis “the same” — meaning the stocks or other proceeds — is to be paid over in equal shares to the brothers and sister of Francis. As to the codicil, it is to be observed that twenty thousand dollars are to be added to the fund set apart in the will for the support and maintenance of Francis. This word “ added ” shows that this further sum shall stand on the same footing, as to terms, with the original provision. Like that provision, it is to be held in trust by William, the income only is to go to Francis; that income is to be paid to him personally; and then, by the express direction of the codicil, the corpus is to go to William.
We think it is clear that it was the intent of the testator that each year’s income should be paid to Francis as his means of maintenance and support for that year; that each year’s income was to be found ready for that purpose as it should be wanted for that purpose; that the only interest that was given to Francis was an interest to have such income as it should accrue, and to have the expenditure of these moneys, and that this expenditure was to be his means of support. He was not intended to have a proprietary right *239 to capitalize this future annual support and make it, by means of his contracts, liable to creditors. His trustee, acting reasonably and in good faith, was to have something to say about the extent to which his support was to go. That matter was one part of the trust. The effect of such a provision as this seems to be, that the beneficiary acquired nothing that he could dispose of but the moneys paid into his hands, and the right to have those moneys to the extent of the income, if reasonably needful. The power of the trustee to sell was not given in order that the proceeds might be applied in addition to the income, to the support of Francis, but in order that the fund should not remain badly invested. Instead of being thus diminished, the corpus was to go next to the brothers and sister. If the whole extent of his interest in this bequest was, to have the income applied to his support, it could not be said that he had an interest to have it applied to his debts generally. And it is to be observed that this bill does not show that the contract was even for something needful to support and maintenance. In short, we find that it was not the intent of the testator that Francis should be furnished with the means of paying his way, and then have besides such an interest in this bequest that, by contracting debts, he should also have power to affect the corpus, or even the future income. He intended to shut out creditors as far as this bequest should be concerned. The question therf arises, whether a provision which does this is valid.
The question whether a beneficial interest can be so given in trust, whether by devise or by voluntary conveyance, that the creditors of the beneficiary shall not subject it to their judgments, has been discussed in two opinions of the Supreme Court. In Nichols vs. Levy, 5 Wall., 433, the court held that it was bound by the decisions of the State Supreme Court, as a rule of property, and therefore to hold that certain lands in that State, conveyed in trust, with provisions against creditors, could not be reached by the latter. It took occasion, however, to express its opinion as to the *240 general rule. Mr. Justice Swayne, speaking for the court, said:
“If the determination of this case depended upon the general principles of jurisprudence, the result must necessarily be in favor of the appellees. It is a settled rule of law that the beneficial interest of the cestui que trust, whatever it may be, is liable for the payment of his debts. It cannot be so fenced about by inhibitions and restrictions as to secure to it the inconsistent characteristics of right and enjoyment to the beneficiary and immunity from his creditors. A condition precedent that the provision shall not vest until his debts are paid and a condition subsequent that it shall be divested and forfeited by his insolvency, with a limitation over to another person, are valid, and the law will give them full effect. Beyond this, protection from the claims of creditors is not allowed to go. * * * But the case does not turn upon these considerations.”
It is to be observed that this was an adoption, as shown by the authorities cited, of the rule of the English court of chancery.
Nine years later, the same court, speaking through Mr. Justice Miller, took occasion, in Nichols, assignee, vs. Eaton et al., 91 U. S., 717, to express its opinion at some length concerning that rule. The court said, page 725:
“ But, while we have thus attempted to show that Mrs. Eaton’s will is valid in all its parts upon the extremest doctrine of the English chancery court, we do not wish to have it understood that we accept the limitations which that court has placed upon the power of testamentary disposition of property by its owner. We do not see, as implied in the remark of Lord Eldon, that the power of alienation is a necessary incident to a life estate in real property, or that the rents arid profits of real property and the interest and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached as a necessary incident to such enjoyment. This doctrine is one which the English chancery court has engrafted upon the common *241 law for the benefit of creditors, and is comparatively of modem origin We concede that there are limitations which public policy or general statutes impose upon all dispositions of property, such as those designed to prevent perpetuities, and accumulations of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy peculiarly appropriate to the jurisdiction of courts of equity to protect creditors against frauds upon their rights, whether they be actual or constructive frauds. But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator’s affection or generosity, is one which we are not prepared to announce as the doctrine of this court.”
The learned justice proceeded to point out that all the States have recognized, by their exemption laws, the policy of allowing property to be enjoyed without liability to be taken by creditors, in cases which call for such protection; and the further fact that our system of recording wills gives to intending creditors the same warning which they receive from the exemption laws; warning, namely, not to rely on the testamentary provision, which has been withdrawn from their reach.
After citing a number of State decisions, in which the validity of provisions against creditors had been recognized, the court concluded as follows:
“We are not called upon in this connection to say how far we would feel bound, in a case originating in a State where the doctrine of the English courts had been adopted so as to become a rule of property, if such a proposition could be predicated of a rule like this. * * * We have indicated our views in this matter rather to forestall any inference that we recognize the doctrine relied on by appellants, and not much controverted by opposing counsel, than *242 because we have felt it necessary to decide it, though the judgment of the court may rest equally well on either of the propositions which we have discussed.”
This opinion completely disposes, and evidently was intended to dispose, of the dictum in Nichols vs. Levy, and expresses a deliberate, conclusion of the Supreme Court, that it is not necessary, in order to prevent creditors from taking the property devised for the beneficiary’s support, that there should be a cessor of title.
/ The principle asserted in the later cases seems to be that, when a testator devises less than a fee-simple, he may define precisely the extent and the application of the interest which the cestui que trust is to have. Indeed, the application of such interest will be found, on analysis, to be only an expression of its extent. Substantially, the testator has a right to say: “ I give to my beneficiary an interest only to the following extent; namely, to such extent that it may be used and applied for his maintenance and support, but not such an interest as may be used and applied to the payment of creditors who may choose to give him credit.” It is not in the power of a creditor to enlarge the interest which the testator has chosen to give, and the extent of the interest given by the testator is not to be construed by the courts to be larger than the testator declares it to be, in order to benefit -persons who have no original interest in the gift. There is no place for public policy in the matter. To say that public policy requires that creditors who extend their credits after such devise should have a right to be paid out of it, is equivalent to saying that the devisee ought to have by the devise more than the testator has given him. It is a mere indirection to talk about the creditor’s rights; the actual operation of the proposition insisted on is, that notwithstanding the testator undertook to give only the annual income of the property, to be used year by year, as it should accrue, for the support of the beneficiary, the latter, the beneficiary, should take an interest to be used in a wholly different way; in other words, take an *243 interest in such a way as to enable him to defeat the testator’s purpose to secure his support by using it up. To call this a creditor’s right, or to talk of policy in such a connection, is a mere confusion of subjects.
The result of our conclusion is that we must sustain the demurrer which the defendants interposed to the bill.