## RIDGEWAY v. WOODWARD et al. *
### No. 6435.

United States Court of Appeals for the District of Columbia.

Argued May 10, 1935.

Decided June 17, 1935.

Etta L. Taggart and Paul D. Taggart, both of Washington, D. C., for appellant.

Charles L. Norris and George C. Gertman, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing appellant's bill.

Writ of certiorari denied 56 S. Ct. 146, 80 L. Ed. —.

On February 27, 1917, Mary R. Ridgeway, a resident of Maryland, executed a voluntary trust deed, which was duly recorded in the District of Columbia and in Maryland, and which, so far as material here, conveyed to James Morris Woodward and George C. Gertman, in fee simple, in trust for her son, George T. Ridgeway, appellant here, real estate located in the District of Columbia and Maryland; also an undivided one-fifth interest in the estate of the grantor's deceased father; with full power and authority to sell and convey the trust estate, the entire income therefrom to be paid to the son during his life; the "trust to be administered under the supervision and direction of the equity branch of the Supreme Court of the District of Columbia," and full power and authority was vested in the trustees and court to pay, convey, or deliver to the son any part or parts, or the whole of the trust property or the proceeds from the sale thereof, at such time or times as the court, upon the petition of the trustees, should, "after independent investigation and inquiry," be satisfied that profitable use would be made thereof by the son, or that his actual necessities by reason of illness or disability would require the use thereof, but not otherwise; provided, however, that upon the death of the son the property conveyed to the trustees for his use and benefit as aforesaid, or whatever might remain of it, was by the deed conveyed to his two sons, Wayne H. Ridgeway and Jesse T. Ridgeway, as tenants in common in fee simple; the property conveyed, as well as the income therefrom not to be liable for any debts contracted by George T. Ridgeway or subject to attachment by creditors.

The grantor, Mary R. Ridgeway, died on the 21st of June, 1924, leaving a will (dated February 27, 1917) and codicil (dated April 10, 1920), both referring to the trust deed.

The will and codicil were admitted to probate in the District of Columbia.

Upon the petition of the trustees the court below assumed jurisdiction of the trust, and a copy of the trust deed was filed in the cause. Subsequently, on July 26, 1926, the trustees represented to the court that they were in possession of and administering the trust estate consisting of premises No. 222 Eleventh Street Northeast, in the District of Columbia, and premises No. 404 Tulip avenue, Takoma Park, Md., as well as of a fund of $2,183.38 in cash. The trustees further represented that between

the execution of the deed of trust in 1917 and the death of the grantor, Mrs. Ridgeway, the conduct of the son "had materially changed," and that at the time of her death he was competent in every respect to receive and dispose of, in his own right, his entire estate, and since her death he had conducted himself properly; that profitable use would be made by him of his entire estate should it be delivered to him. The trustees also represented that they should exercise the discretion vested in them by the trust deed, and to that end prayed the court to terminate the trusteeship in so far as it affected the property and estate of appellant, George T. Ridgeway, "he already having the physical possession and beneficial use of the real estate described in this bill, the legal title to which stands in them, as trustees"; that appellant had agreed to execute an instrument directing the trustees to convey the real estate to appellant's two sons. Wayne H. Ridgeway and Jesse T. Ridgeway, "reserving unto himself a life estate therein, so that in its last analysis, the only estate which the said George T. Ridgeway will actually come into possession of, other than that now enjoyed by him, is the aforesaid fund in the possession of the trustees, which is subject to the payment of their compensation which the said George T. Ridgeway has agreed to at $600.00." The petition also sought the court's authority to turn over to appellant the fund of $2,183.38 and $94.70 interest thereon (a total of $2,278.08), and that they be discharged as trustees.

In that proceeding Ridgeway was represented by competent counsel and made answer under oath, stating that he had "made demand upon said trustees for the termination of the trust estate," and agreeing that the trustees might convey the real estate described to his two sons as tenants in common, "subject only to a life estate therein reserved for me, and that the fund $2,278.08, in their hands, be paid over to me outright"; that upon order being made terminating the trust estate in accordance with his answer, Ridgeway consented that the trustees might be discharged from further liability. The affidavit to his answer reads as follows: "I do solemnly swear that I have read the foregoing answer by me subscribed and I know the contents thereof; that the facts therein stated as of my own personal knowledge are true and those stated as upon information and belief I believed to be true." His counsel also indorsed his name on the answer.

Answers to the trustees' petition also were filed by appellant's sons, Wayne H. Ridgeway and Jesse T. Ridgeway.

Thereupon, on July 26, 1926, the court "upon consideration of the report and petition of James Morris Woodward and George C. Gertman, trustees, and the consent of George T. Ridgeway thereto, and the answers of Wayne H. Ridgeway and Jesse T. Ridgeway thereto," decreed that the trust estate "be and the same is hereby terminated and dissolved," and that the trustees be authorized and empowered to convey to Wayne H. Ridgeway and Jesse T. Ridgeway, as tenants in common, subject to a life estate therein reserved for the sole and exclusive use and benefit of George T. Ridgeway, their father, and that the trustees pay over to George T. Ridgeway, "free and discharged from all claim of his children, Wayne H. Ridgeway and Jesse T. Ridgeway, the cash fund in their hands of $2,183.38, and any accumulated interest thereon, less the compensation, $600.00, of said trustees for their services pertaining to the administration of said trust estate." Ridgeway and his two sons by their indorsement recommended and requested the signing of the decree. Thereupon, the trustees on July 27, 1926, carried out the terms of the court's decree.

On December 10, 1934, almost 8½ years after the termination of the trust and the discharge of the trustees, appellant filed the bill herein, made under oath and entitled "Bill to Administer Trust." In his bill it is alleged that at the time appellant signed his name consenting to the order terminating the trust "he believed that his sons were taking the property and would hold it under the same conditions under which the trustees held it. * * * The first time he had real knowledge of the transaction in so far as an understanding of it was concerned was around or about the 1st of November 1934." That up to the time of filing the bill he had managed to live on a small income, "but now his circumstances demand additional funds." That a spendthrift trust having been created, the equity court was without power, even with the consent of the cestui que trust, to terminate it. He also alleged that on account of his extreme age (77 years) and his poor health his income from the two parcels of real estate is not sufficient.

The prayers of the bill are that the court take jurisdiction of and supervise the administration of the trust as far as plain-

tiff is concerned; that the decree of July 26, 1926 (terminating the trust), be set aside and vacated; that the appellant's two sons be required by decree to reconvey to appellees Woodward and Gertman, as trustees, or to substitute trustees, the property mentioned and described in the above decree; and that, upon reconveyance of the property to the trustees or substituted trustees, the court order a sale of the property or so much thereof as found by the court to be necessary for the benefit and use of the plaintiff.

To this bill appellees filed a motion to dismiss upon several grounds, inter alia, that although entitled a "bill to administer trust," there is no trust to administer; that appellant accepted the benefit of the decree of July 26, 1926, and has acquiesced therein since that time; that it appears from the bill that the decree terminating the trust was based upon the petition of the defendant trustees, the answers of the plaintiff and of the defendants, Wayne H. Ridgeway and Jesse T. Ridgeway, they being all the beneficial persons concerned in the trust estate; that the bill contains no allegation of fraud; that the trust estate was terminated by the court upon the express demand of the plaintiff made through his counsel and upon his agreement with the defendants, Wayne H. Ridgeway and Jesse T. Ridgeway, that the trustees should convey the real estate to the sons as tenants in common, subject to a life estate reserved to the plaintiff, and that the cash fund should be paid over to the plaintiff outright.

The court decreed that the motion to dismiss should be granted, with permission to plaintiff to amend. Plaintiff through his counsel in open court elected to stand upon the bill. Whereupon the court ordered that the bill be finally dismissed.

█ The language used by the grantor, Mrs. Ridgeway, in creating the trust undoubtedly was intended to create and did in fact create a spendthrift trust. Morrow v. Apple, 58 App. D. C. 171, 26 F.(2d) 543. Appellant contends that the court below was without power to terminate the trust. In Huber v. Donoghue, 49 N. J. Eq. 125, 129, 23 A. 495, 496, the court quoted with approval from 2 Perry on Trusts, c. 32, § 920, as follows: "Although a trust may not have ceased by expiration of time, and though its purposes may not have been accomplished, yet if all the parties who are or may be interested in the trust property are in existence, and sui juris, and if they all consent and agree thereto, courts of equity may decree the determination of the trust fund among those entitled." In Manders v. Mercantile Trust Co., 147 Md. 448, 457, 128 A. 145, the court declared that the rule, supported by reason and the weight of authority, is that a court of equity may decree the termination of a trust when the object of the trust has been accomplished and the parties who are or may be beneficially interested in the trust property are living and sui juris and when all consent and agree to the ending of the trust.

█ But in the present case it is not necessary to look beyond the trust deed for power to terminate it, for by the express terms of that instrument authority was vested in the trustees and the court to pay, convey, or deliver to the son "any part or parts, or the whole of the aforesaid property or the proceeds from the sale thereof" at such time or times as the court should, after independent investigation, be satisfied that profitable use thereof would be made by the son. All persons who might have been beneficially interested in the trust property were in being and sui juris. All joined in the petition of the trustees to terminate the trust, and we must assume that the court, "after independent investigation and inquiry," was satisfied that the interests of the son would thereby be best subserved. The action of the trustees should be commended rather than condemned, for it was a small estate and the course pursued relieved it of further expense, thus adding to the income of the son. Appellant was represented by competent counsel and made oath that he had read his answer to the petition to terminate the trust and knew its contents. He must also have been familiar with the contents of the trustees' petition, which was attached to his answer. There is not the slightest reason, upon the record before us, to assume that appellant was imposed upon or misled at that time. On the contrary, it is reasonable to assume that then, at the age of about 69, he was equally if not more capable of understanding the situation than he was at the time of filing this bill, 8½ years later, when he was 77 years of age. When necessity for the trust no longer existed, reason and justice pointed to its termination.

The bill being without equity, the decree is affirmed.

Affirmed.