**UNITED MINE WORKERS OF AMERICA et al., Plaintiffs,**

v.

**W. A. ("Tony") BOYLE et al., Defendants.**

Civ. No. 3436–69.

United States District Court, District of Columbia.

July 12, 1976.

Richard L. Trumka, United Mine Workers of America, Washington, D.C., for plaintiff U.M.W.A.

Robert Cadeaux, Washington, D.C., for defendant Boyle.

J. Gordon Forester, Jr., Forester & Smith, Washington, D.C., for defendants Titler and Owens.

John J. Wilson, Whiteford, Hart, Carmody & Wilson, Washington, D.C., for The National Bank of Washington, trustee.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

### I. *Background*

At an earlier stage in these proceedings the Court found that the defendants herein, W. A. ("Tony") Boyle, George Titler, and John Owens, as officers of the plaintiff United Mine Workers of America (UMWA), had violated fiduciary duties imposed upon them by Section 501 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 501. Pursuant to those findings, on December 9, 1975 a final judgment was entered in favor of UMWA against the defendants jointly and severally in the aggregate amount of $239,993.25 and against defendant Boyle individually in the additional amount of $69,870.50.[1] A motion by the defendants to alter or amend the judgment was denied on January 9, 1976. On February 6, 1976, defendant Owens noticed an appeal from the judgment of December 9, 1975. That appeal is presently pending.[2]

Each of the three defendants is a beneficiary of the International Union, UMWA Pension Trust (the "Pension Trust") which is administered by The National Bank of Washington as Trustee (the "Trustee"). For the purpose of securing satisfaction of the Court's judgments, on April 6, 1976 the UMWA levied writs of attachment against the beneficial interests of the defendants in the Pension Trust, addressed to the Trustee.[3]

The plaintiff has applied for a judgment against the assets of the defendants held by the Trustee, as a continuing levy equal to 25 percent of their monthly pension payments;[4] and the Trustee, exercising a discretionary power accorded under the trust instrument, has suspended that percentage of the monthly payments due the defendants under the Pension Trust pending a final determination of the UMWA's right to execution upon the writs.[5] The defendants

---

1. The Union funds involved in the judgments were other than those of the Pension Trust, *infra.*

2. The effect of this Court's judgment has not been stayed pending resolution of defendant Owens' appeal. *Cf.* Fed.R.Civ.P. 62; Fed.R. App.P. 8.

3. On April 13, 1976, the Trustee responded to interrogatories which had been filed with the writs of attachment and revealed that each of the defendants was then receiving benefits under the Pension Trust—defendant Boyle in the amount of $1,300 per month and defendants Titler and Owens each in the amount of $1,100 per month.

4. 16 D.C.Code § 572 provides, in pertinent part, that an attachment levied upon "wages due a judgment debtor" becomes a lien and continuing levy upon gross wages due or to become due for the amount specified in the attachment

to the extent of 25 percent of the judgment debtor's "disposable wages" for that week. The Code defines "wages" to include "periodic payments pursuant to a pension or retirement program;" and "disposable wages" means that portion of individual earnings remaining after the "deduction from those earnings of any amounts required by law to be withheld" 16 D.C. Code § 571 (1) & (2). However, the aforementioned sections apply in the present case if, and only to the extent that, the "spendthrift provision" of the Pension Trust does not constitute a bar to attachment or garnishment. *See* discussion, *infra.*

5. The Pension Trust Indenture, *as amended,* provides at paragraph 12, *inter alia,* that

[i]f Court action should be brought to have said monthly pension paid to some other person, the Trustee in its discretion may sus-

have moved to quash the writs of attachment. The Trustee has entered an appearance as garnishee and fiduciary in order to defend the Pension Trust. *See* 16 D.C.Code § 554.

## II. *The Nature of the Pension Trust*

Since the principal contentions advanced in support of and in opposition to the various pending motions involve the interpretation and ultimate effect of Paragraph 12 of the Pension Trust Indenture, *as amended,* (the "Indenture"), the Court must determine at the outset whether or not that provision creates a valid spendthrift trust. Paragraph 12 states, in pertinent part,

No employee or retired employee shall have any right, title, or interest to any portion of the Pension Fund held by the Trustee, until actual payment to the retired employee by the Trustee. No assignment, anticipation, pledge or encumbrance whatsoever shall be permitted and no attempts on the part of the retired employee to transfer or pledge his right to any payment or portion of the monthly pension herein provided shall be recognized by the Trustee. All pension payments shall be made directly into the hands of the retired employee and to no other person, nor shall any such monthly payments be subject to attachment or other legal process (Plaintiff's Exh. 1).

Although a small number of states[6] adhere to the so-called "English Rule" that spendthrift trusts are invalid to the extent that they purport to restrain voluntary and involuntary alienation of the beneficiary's interest, the general validity of such trusts is today recognized in a majority of jurisdictions,[7] either by statute or, as in the District of Columbia, by judicial decision. *See Fearson v. Dunlop,* 21 D.C. 236 (1892); *King v. Shelton,* 36 App.D.C. 1 (1910), *aff'd sub*

*nom., Shelton v. King,* 229 U.S. 90, 33 S.Ct. 686, 57 L.Ed. 1086 (1913); *Morrow v. Apple,* 58 App.D.C. 171, 26 F.2d 543 (1928); *Ridgeway v. Woodward,* 64 App.D.C. 399, 78 F.2d 878, *cert. denied,* 296 U.S. 575, 56 S.Ct. 146, 80 L.Ed. 407 (1935); *Buchanan v. National Savings and Trust Co.,* 79 U.S.App.D.C. 278, 146 F.2d 13 (1944); *Liberty National Bank v. Hicks,* 84 U.S.App.D.C. 198, 173 F.2d 631 (1948); *Seidenberg v. Seidenberg,* 96 U.S.App.D.C. 245, 225 F.2d 545 (1955); *American Security and Trust Co. v. Utley,* 127 U.S.App.D.C. 235, 382 F.2d 451 (1967).

Whether a valid spendthrift trust has been created in a particular instance is an issue controlled by the intent of the settlor (or trustor) as manifested in the language actually employed—"no special form of words is necessary." *Morrow v. Apple, supra,* 58 App.D.C. at 172, 26 F.2d at 544. Thus, a trust which by its terms imposes "a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary" is a spendthrift trust. *Restatement (Second) of Trusts* § 156(2) (1959) [hereinafter "Restatement"].

Applying the foregoing legal principles to the terms of paragraph 12 of the Trust Indenture, we conclude that the settlor did in fact create a valid and enforceable spendthrift trust. From the unequivocal language used the desire to impose an absolute restraint upon the voluntary and involuntary alienation of the beneficiary's equitable interest is evident. A retired employee-beneficiary has no right, title or interest in any portion of a monthly pension payment until an actual disbursement to him has occurred. The Trustee is expressly directed to make all payments to the beneficiary and any attempt by a retired employee to transfer or pledge any monthly payment, or portion thereof, is declared of no effect. Moreover, it is explicitly stated

---

pend the monthly payments otherwise payable to said retired employee, pending final judicial determination. . . .

**6.** *I.e.,* Rhode Island, Ohio, Kentucky, and New Hampshire.

**7.** *See generally* Bogert, Trusts and Trustees § 222 (2d ed. 1965) [hereinafter "Bogert"]; 76

Am.Jur.2d Trusts § 153 *et seq.;* Powell, 4 Real Property ¶ 557 (1975) [hereinafter "Powell"]; Scott, II Trusts § 152.1 (3d ed. 1967) [hereinafter "Scott"]; Griswold, Spendthrift Trusts § 53 *et. seq.* (2d ed. 1947) [hereinafter "Griswold"]; Annot., 119 ALR 19 (1939) supplemented by 34 ALR 2d 1335 (1948).

that pension trust payments shall not be "subject to attachment or other legal process."

■ However, where a spendthrift trust has been created, it does not inexorably follow that its terms constitute an absolute bar to the lawful claims of all classes of creditors. For, as the Court of Appeals in *American Security and Trust Co v. Utley, supra,* noted:

> We have long recognized the validity of the so-called spendthrift trust, but not without limitation. The historical purpose of settlor or testator in creating a trust, the income of which was protected from invasion, was to protect the interests of the beneficiary. This purpose has been held to render the income totally immune from claims . . . We see no reason for an absolutist "all or nothing" approach. See e.g., *Shelley v. Shelley,* 223 Or. 328, 334, 354 P.2d 282, 285 (1960). Traditionally, in the absence of a statute, several distinct classes of claimants have been permitted to invade the beneficiary's interest. See RESTATEMENT, supra, at § 157. (Footnotes omitted). 127 U.S.App.D.C. at 236–37, 382 F.2d at 452–53.

The UMWA asserts an exception. It contends that even if paragraph 12, *supra,* of the Trust Indenture imposes an otherwise valid restraint upon voluntary and involuntary alienation of the defendants' beneficial interests, considerations of public policy militate against application of its prohibitory effect in the circumstances at hand, *viz.:* (1) "self dealing" by these defendants in the creation and subsequent amendment of the Pension Trust, and (2) the tortious nature of defendants' conduct underlying the Court's final judgment. We address each of those contentions separately.

### A. Self-Dealing

■ Even in those jurisdictions which regard spendthrift trusts as generally enforceable, it is acknowledged that "one cannot settle upon himself a spendthrift or other protective trust, or purchase such a trust from another, which will be effective to protect either the income or the corpus against the claims of his creditors, or to free it from his own power of alienation", 76 Am.Jur.2d Trusts § 168; ·see *Shelton v. King, supra; Liberty National Bank v. Hicks, supra; American Security and Trust Co. v. Utley, supra; Restatement, supra* at § 156; *Scott, supra* at § 156; *Bogert, supra* at § 223; Annot., 34 A.L.R.2d 1335 (1954). This rule has application not only to those "who make a direct conveyance to a trustee in trust for themselves," but also to "persons who procure the creation of trusts for their benefit". *Bogert, supra* at § 223.

The defendants herein clearly do not fall within the category of direct settlors since they have made no "direct conveyance" to the Trustee. From its inception, the Pension Trust has been non-contributory and a gratuity by the UMWA to its former employees. However, it is the plaintiff's contention that in the creation and amendment of the Trust Indenture, the defendants, as former UMWA employees and/or officers, had it within their power and discretion to exclude themselves as Pension Trust beneficiaries and, in failing to do so, the defendants became indirect settlors of the Trust.

We have some difficulty perceiving the logic of plaintiff's novel arguments in this regard. But assuming *arguendo* that in certain situations tacit ratification through inaction might transform a beneficiary into spendthrift settlor, careful examination of the record before the Court leads to the conclusion that the UMWA's contentions are factually untenable.

On December 29, 1959, pursuant to an authorizing resolution of the UMWA International Executive Board, the Pension Trust Indenture was executed by and between the International Union, UMWA as "Trustor" and The National Bank of Washington as "Trustee." It was created to provide retirement income to former employees of the International Union and those of UMWA Districts 1 through 31 (Plaintiff's Exh. 1, par. 8, *et seq.*). The document was signed, on behalf of the International Union by its then president John L. Lewis, vice president Thomas Ken-

nedy, and secretary-treasurer John Owens. The spendthrift provision, *supra*, was included at paragraph 12 and has remained unaltered through five subsequent amendments of the basic document. Each amendment bears the signatures of two or more of the defendants as UMWA International officers, but only the two most recent were endorsed by all three of the defendants herein.

Standing alone, the signature of defendant Owens on the original document and those of two or more of the defendants on each of the five amendments constitute *prima facie* evidence of nothing more than the fact that unions act through their officers. Plaintiff has presented no proof to rebut the presumption that these documents, which, on their face, bear every appearance of regularity and validity were, in fact, duly authorized by the UMWA International Executive Board. The record is devoid of any showing, for example, that the trust or its amendments resulted from undue influence or ultra vires activity by the defendants or that the final content of the documents was other than that which had been authorized.

In short, the UMWA has proffered no evidence which would permit the inference that defendants Boyle, Titler and Owens procured creation of or amendment to the UMWA Pension Trust for their personal benefit. Consequently, we are unable to reach any conclusion but that the exclusive settlor of the Pension Trust was the Union itself. In this respect, at least, the defendants occupy the same status with respect to the trust as any of its other beneficiaries.

### B. *Public Policy and Tort Creditors*

■ As we have previously noted, in most situations the courts of this jurisdiction have given effect to spendthrift provisions immunizing the beneficiary's interest from claims of his creditors. Nonetheless, on public policy grounds, certain narrowly delineated classes of creditors have been excepted from application of the spendthrift doctrine and permitted to "reach the interest of the beneficiary, notwithstanding

an express direction to the contrary in the trust instrument." *Bogert, supra* at § 224; see *American Security and Trust Co. v. Utley, supra,* [and cases cited therein]. The commonly recognized public policy exceptions to the spendthrift trust doctrine are set forth at Section 157 of the *Restatement, supra* :

. . . the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary, (a) by the wife or child of the beneficiary for support, or by the wife for alimony; (b) for necessary services rendered to the beneficiary or necessary supplies furnished to him; (c) for services rendered and materials furnished which preserve or benefit the interest of the beneficiary; (d) by the United States or a State to satisfy a claim against the beneficiary.

See also *Scott, supra* at § 157 *et seq.; Griswold, supra* at § 362 *et seq.; Bogert, supra* at § 227; 76 Am.Jur.2d Trusts § 175 *et seq.; Annot.,* 174 A.L.R. 310 (1948).

The plaintiff has not attempted to characterize any of the present claims as being encompassed within the purview of these "traditional" exceptions—and clearly they are not. Instead, the UMWA has asked the Court to carve out a new and heretofore unrecognized exception for claimants who have become involuntary tort creditors.

This is a question of first impression in the District of Columbia and little guidance can be derived from the few reported decisions in other jurisdictions.

In a late nineteenth century decision, *Thackara v. Mintzer,* 100 Pa. 151, 154 (1882), there is dictum to the effect that a spendthrift clause constitutes an absolute bar to attachment "[w]hether the judgment be for a breach of contract or for a tort." Although two later lower court holdings in Pennsylvania[8] are in accord, recent trends in the law of spendthrift trusts cast significant doubt upon the viability of the *Thackara* approach. See *Scott, supra* at § 157.5; *Griswold, supra* at § 365, n. 86; *Note,*

---

**8.** *Wright's Estate,* 12 Pa.Dist.Rep. 321 (1903); *Davis v. Harrison,* 3 Pa.D. & C. 481 (1923).

*Trusts: Tort Claims as an Exception to the Spendthrift Trust Doctrine,* 17 Okl.L.Rev. 235, 236 (1964); *Note, Attachability of a Beneficiary's Interest in Satisfaction of a Tort Claim,* 28 Notre Dame L. 509 (1953); *Note, Tort Liability of the Beneficiary of a Spendthrift Trust,* 57 Dickinson L.Rev. 220, 221–22 (1953).

In the only other reported decision on point, *Kirk v. Kirk,* 254 Or. 44, 456 P.2d 1009 (Sup.Ct.1969), an Oregon court summarily rejected the plaintiff's request for attachment of the beneficiary's interest in a spendthrift trust based upon a judgment for tort.[9]

Notwithstanding the absence of case authority, a tort creditor exception has been suggested by a number of commentators and incorporated in the statutes of at least one state.[10] *See e. g.,* Griswold, *Reaching the Interest of a Beneficiary of a Spendthrift Trust,* 43 Harv.L.Rev. 63 (1929); *Griswold, supra* at § 365 and § 565 [model statute]; *Scott, supra* at § 157.5; *Bogert, supra* at § 224; *Note,* 17 Okl.L.Rev. 235 (1964); *Note,* 28 Notre Dame L. 509 (1953); *Note,* 57 Dickinson L.Rev. 220 (1953). Also noteworthy is Comment a of Section 157 of the *Restatement, supra,* which acknowledges that "it is possible that a person who has a claim in tort against the beneficiary of a spendthrift trust may be able to reach his interest under the trust." [11]

The compelling public policy considerations weighing in favor of such an exception have been articulated by Professor Scott, as follows:

In many of the cases in which it has been held that by the terms of the trust the interest of a beneficiary may be put beyond the reach of his creditors, the courts have laid some stress on the fact that the creditors had only themselves to blame for extending credit to a person whose interest under the trust had been put

beyond their reach. The courts have said that before extending credit they could have ascertained the extent and character of the debtor's resources. Certainly, the situation of a tort creditor is quite different from that of a contract creditor. A man who is about to be knocked down by an automobile has no opportunity to investigate the credit of the driver of the automobile, and has no opportunity to avoid being injured no matter what the resources of the driver may be.

While it can scarcely be denied that there is something shocking in the notion that a settlor may be permitted to immure a beneficiary's interest from the lawful claims of third-party tort creditors by the device of a spendthrift trust, we believe that the considerations are different in a case, such as this, in which the tort victim and trust settlor are one and the same person.

Unlike the hypothetical third-party tort victim, a settlor can preserve his rights against the beneficiary's interest in the trust by circumspection in drafting the trust instrument. In anticipation of existing and foreseeable future obligations, the settlor is at liberty to include or exclude from the trust agreement such terms and conditions as he may deem appropriate, even to deleting a spendthrift clause in its entirety. So here, unlike the third party tort creditor, the UMWA, as settlor of the Pension Trust, could easily have guaranteed the availability of the defendants' beneficial interests for purposes of satisfying a judgment in its favor based upon a tort committed by the beneficiary against the union and unrelated to duties under the Trust. But the UMWA chose to do otherwise.

In the original Trust Indenture and through its subsequent amendments, the absolute, restrictive language of paragraph 12 was retained. We need look no further than its terms to ascertain the plaintiff's

---

9. *See* Scott, *supra* at § 157.5, n. 1 (1975 Supp.).

10. See La.Rev.Stat. § 9: 2005 [patterned after the model spendthrift trust statute proposed by Dean Griswold].

11. According to Professor Scott, "[i]n the absence of authority it was felt by those who were responsible for the preparation of the Restatement of Trusts that no categorical statement could be made on the question." Scott, *supra* at § 157.5.

clear intention that no monthly pension payment, or portion thereof, should be "subject to attachment or other legal process," including attachments levied by the UMWA itself. Under such circumstances, the Court is not persuaded that the terms of the Pension Trust Indenture should be subject to *ex post facto* judicial amendment to relieve the plaintiff of its conscious and voluntary commitment thereunder.[12]

### III. *Order*

It is, accordingly, by the Court this 12th day of July, 1976,

ORDERED that plaintiff's application for judgment upon writs of attachment should be, and the same is hereby, denied. And it is further

ORDERED that defendants' motion to quash the writs of attachments should be, and the same are hereby, granted.

---

12. Nothing in this decision in any manner implies that the plaintiff is not justly entitled to the full amount of compensatory damages which we have previously awarded. The UMWA may levy additional attachments on other assets of the defendants, as authorized by law. However, this Court is of the firm opinion that the self-imposed limitation of the Pension Trust's spendthrift clause prohibits the UMWA from obtaining a judgment upon the defendants' monthly pension payments while in the hands of the Trustee. We express no opinion on the propriety of attachments after pension payments have been disbursed to the defendants. Nor are we here concerned with claims against death benefits which may become payable to the estates or beneficiaries of the defendants. These issues are not before the Court at this juncture.